UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SIMPSON,

                Petitioner,                        Case Number: 2:09-CV-11998

v.                                        HON. GEORGE CARAM STEEH

BLAINE LAFLER,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

Petitioner James Simpson filed a *pro se* petition for a writ of habeas corpus under 28

U.S.C. § 2254.  Simpson is a state prisoner in the custody of the Michigan Department of

Corrections for convictions for second-degree murder, assault with intent to murder (two counts),

and possession of a firearm during the commission of a felony.  He argues that his convictions

were obtained in violation of his constitutional rights because newly-discovered evidence (a

recanting witness affidavit) establishes his actual innocence and because a police lieutenant

committed perjury and knowingly presented a false statement allegedly made by Simpson.

Respondent argues that the claims are meritless.  The Court finds that habeas relief is not

warranted and denies the petition.

I.      **Facts**

Simpson's convictions arise from a shooting that occurred in the City of Detroit on July

24, 1991, resulting in the death of Darryl Holcomb.  Bryant Branch testified that shortly after

midnight on that date, he was driving down Van Dyke Street when a car behind him repeatedly flicked its bright lights on and off.  At the next traffic light, the vehicle, which Branch identified as a blue Ford Tempo, pulled alongside his vehicle.  Someone from the blue vehicle, who Branch identified as Simpson, fired five or six shots into Branch's vehicle.  Branch and his two passengers, Darryl Holcomb and Tamara Berry, sustained gunshot wounds.  Branch testified that he attempted to drive his vehicle to a hospital, but was involved in a car accident on the way.  At that point, he noticed that Holcomb had been shot in the head.  Police then came to the scene of the accident and provided assistance.

Thomas Hale testified that he was seated in the rear seat of Branch's car on the night of the shooting.  He testified that he saw a red car pull up alongside Branch's vehicle.  He identified Simpson as the shooter.

Tamara Berry was seated in the rear of the vehicle.  She testified that she was shot once in her left shoulder.  She did not see the shooter.

Simpson offered an alibi defense.  Alfred Miles testified that, on the night of the shooting, Simpson was with him at his house from approximately 10:00 p.m. until the following morning.

In rebuttal, City of Detroit Police Lieutenant Joan Ghougoian testified that she took a statement from Simpson on September 6, 1991, in which Simpson admitted to being in the vehicle that fired shots at Branch's vehicle.  She testified that Simpson refused to sign the statement.

## II.    Procedural History

Following a bench trial, Simpson was convicted in Wayne County Circuit Court of second-degree murder, Mich. Comp. Laws § 750.317, two counts of assault with intent to

commit murder, Mich. Comp. Laws § 750.83, and possession of a firearm while committing a felony, Mich. Comp. Laws § 750.227b.  He was sentenced to twenty-five to forty years in prison for the murder conviction, twenty to thirty-five years in prison for the assault convictions, and a consecutive term of two years in prison for the felony-firearm conviction.  The Michigan Court of Appeals affirmed Simpson's convictions.  *People v. Simpson,* No. 155093 (Mich. Ct. App. June 2, 1994).  On November 30, 1994, the Michigan Supreme Court denied leave to appeal.  *See People v. Simpson*, No. 99893 (Mich. Nov. 30, 1994).

In 1995, Simpson filed a motion for relief from judgment in the trial court.  The trial court denied the motion.  Simpson moved for reconsideration, which the trial court denied on June 30, 1995.  Simpson did not appeal the trial court's decision.

On January 20, 1998, Simpson filed a second motion for relief from judgment.  The trial court denied the motion.  Both Michigan appellate courts denied Simpson's applications for leave to appeal the trial court's decision.  *People v. Simpson*, No. 222311 (Mich. Ct. App. May 3, 2000); *People v. Simpson*, No. 117533 (Mich. Feb. 26, 2001).

On August 13, 2001, Simpson filed a petition for a writ of habeas corpus in this Court. The District Court dismissed the petition with prejudice because the petition was time-barred. *See Simpson v. Howes*, No. 01-cv-10307 (E.D. Mich. June 10, 2002) (Lawson, J.).

On August 10, 2005, Simpson filed a motion for relief from judgment in the trial court, raising the claim that newly-discovered evidence showed that the only witness placing Simpson at the scene of the crime had recanted his testimony.  Simpson presented an affidavit from the witness in support of this claim.  The trial court denied leave to appeal.  *People v. Simpson*, No. 91-010300-01-FC (Wayne County Circuit Ct. May 7, 2007).  Simpson's applications for leave to

appeal were denied by the Michigan Court of Appeals, *People v. Simpson*, No. 280279 (Mich. Ct. App. Dec. 17, 2007), and the Michigan Supreme Court, No. 135932 (Mich. Feb. 4, 2009). The Michigan Supreme Court denied a motion for reconsideration. *People v. Simpson*, No. 135932 (Mich. April 28, 2009).

On May 5, 2009, Simpson filed another habeas corpus petition. This Court transferred the petition to the Court of Appeals. On June 24, 2010, the Court of Appeals authorized the filing of a second petition for writ of habeas corpus. The matter was returned to this Court and Respondent ordered to file a responsive pleading. Respondent has filed a responsive pleading. Simpson seeks habeas relief on the grounds that witness Thomas Hale has recanted his trial testimony and that Lieutenant Joan Ghougoian perjured herself by presenting a false statement she claimed was made by Simpson.

## III.    Standard

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of

-4-

facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. __, 131 S. Ct. 770, 789 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the

Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

IV.   **Discussion**

A.   **Hale Affidavit**

Simpson argues that habeas relief should be granted on the basis of the affidavit of Thomas Hale. Hale was a passenger in Branch's vehicle on the night of the shooting. At trial, Hale identified Simpson as the shooter. In the February 22, 2005 affidavit that forms the basis for Simpson's claim, Hale states that his trial testimony identifying Simpson as the shooter was false. He states that he is "absolutely positive" that the person who fired the gun was not Simpson.

To the extent that Simpson presents Hale's affidavit as a free-standing claim of actual innocence, habeas relief is not warranted. The Supreme Court of the United States has never

-6-

recognized a free-standing or substantive actual innocence claim. *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir.2007), *citing Zuern v. Tate*, 336 F.3d 478, 482, n. 1 (6th Cir.2003), and *Staley v. Jones*, 239 F.3d 769, 780, n. 12 (6th Cir. 2001). The Supreme Court has twice suggested that a "truly persuasive demonstration" of actual innocence would render a petitioner's execution unconstitutional. *Herrera v. Collins*, 506 U.S. 390, 417 (1993); *House v. Bell*, 547 U.S. 518, (2006). This is not a capital case. The Supreme Court has never held that a substantive actual innocence claim is cognizable in habeas corpus. And, even if actual innocence, standing alone, could be a basis for habeas corpus relief in a non-capital case, the affidavit presented here falls far short of being a truly persuasive demonstration of factual innocence.

The form of Hale's affidavit is suspect. The affidavit is handwritten on a plain piece of paper. The notary acknowledgment is on a separate piece of paper, which bears a law firm's letterhead. In the affidavit, Hale offers no explanation as to why he testified falsely in the first place or why he decided to recant his testimony a decade after the trial. "Recanting affidavits and witnesses are viewed with extreme suspicion by the courts." *Byrd v. Collins*, 209 F.3d 486, 508 n.16 (6th Cir. 2000) (quotation omitted). *See also Welsh v. Lafler*, No. 10-1467, 444 F. App'x 844, 850 (6th Cir. 2011) (trial witness's sworn recantation must be viewed with caution); *Bower v. Curtis*, No. 03-1821, 118 F. App'x 901, 908 (6th Cir. Dec. 17, 2004) ("The recanting of trial testimony by prosecution witnesses is typically viewed with the 'utmost suspicion.'") (internal quotation omitted). Moreover, "[e]ven if accepted, a post-trial recantation is generally not sufficient to grant habeas relief absent constitutional error." *Bower*, 118 F. App'x at 908. Petitioner fails to corroborate Hale's affidavit with other evidence of innocence. Standing alone,

Hale's affidavit hardly provides the kind of evidence sufficient to call into doubt Simpson's conviction.

### B.      Presentation of Allegedly Perjured Testimony

In his second claim, Petitioner argues that the prosecutor committed misconduct by knowingly presenting false testimony by witnesses Hale and police officer Joan Ghougoian.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

A false-testimony claim falls under the *Brady* disclosure doctrine, which requires the government to disclose evidence favorable to a defendant if it is "material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The "contours of [a false-testimony] claim were predominantly shaped by two Supreme Court cases: *Napue v. Illinois*, 360 U.S. at 269–72, 79 S.Ct. 1173, and *Giglio v. United States*, 405 U.S. 150, 153–54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)." *Brooks v. Tenn.*, 626 F.3d 878, 894 (6th Cir. 2010).

The Sixth Circuit has developed a three-part test for determining if the prosecution has committed a *Brady–Napue–Giglio* violation:

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.  In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew  it was false.  The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*Id.* at 894-95, *quoting Coe v. Bell*, 161 F.3d 320, 343 (6th Cir.1998).

A false statement is material under this standard, and "[a] new trial is required[,] if the false testimony could in any reasonable likelihood have affected the judgment of the jury." *Giglio*, 405 U.S. at 154, *quoting Napue*, 360 U.S. at 271.

Simpson has not shown that Hale's trial testimony was actually false.  While the affidavit contradicts Hale's trial testimony, Simpson provides no arguable basis for finding the recanting affidavit, executed approximately a decade after the trial under unknown circumstances, more credible than Hale's trial testimony.  In addition, Simpson provides no evidence to support a finding that the State presented Hale's testimony knowing it was false.  Hale's affidavit, even if accepted as true, shows only that Hale changed his testimony, not that the prosecutor knew the trial testimony was false.

Simpson also claims that the prosecutor improperly and knowingly presented the false testimony of Lieutenant Joan Ghougoian.  He claims she perjured herself when she testified, in rebuttal, that Simpson admitted to being in the vehicle from which the fatal shots were fired.  In support of his claim that this testimony was false, Simpson points to newspaper articles and a civil complaint regarding Ghougoian's interrogation tactics and allegations that she committed perjury in other, unrelated cases.  The allegations against Ghougoian referenced in the articles

-9-

and complaint are not specific to Simpson's case. Therefore, he has failed to show that her trial testimony was false. Habeas relief is denied on this claim.

**V.      Certificate of Appealability**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

**VI.     Conclusion**

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

Dated:  November 28, 2012

                                                    s/George Caram Steeh
                                                    GEORGE CARAM STEEH
                                                    UNITED STATES DISTRICT JUDGE

-10-

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record and on
James Simpson #165015, Carson City Correctional Facility,
10522 Boyer Road, Carson City, MI 48811, on
November 28, 2012, by electronic and/or ordinary mail.

s/Barbara Radke
Deputy Clerk